UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEMI AWOSIKA,

           Plaintiff,

           v.

TARGET CORPORATION,

           Defendant.

CASE NO. C11-185RSM

ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court for consideration of defendant's motion for summary judgment. Dkt. # 34. Defendant has also asked the Court to strike an exhibit, designated as Appendix A to plaintiff's opposition. Dkt. # 42. Plaintiff has opposed the motion for summary judgment, but did not submit a surreply to oppose the motion to strike. For the reasons set forth below, defendant's motion to strike shall be granted, and defendant's motion for summary judgment shall be denied.

FACTUAL BACKGROUND

Plaintiff Kemi Awosika is a pharmacist licensed to practice in the State of Washington. She asserts in the complaint that she began working as a pharmacist in defendant Target Corporation's Redmond store ("Target") in May of 2006, and was promoted to the position of Pharmacy Manager in November 2006. Complaint, ¶¶ 3.3, 3.4. She hired Christina Eckhoff, a licensed pharmacy technician, to work in the department, but noticed at some time thereafter that Ms. Eckhoff had difficulty

ORDER - 1

calculating dosages of prescriptions. *Id*., ¶¶ 3.6, 3.7.  Plaintiff had to re-calculate every prescription dose done by Ms. Eckhoff to ensure that it was correct. *Id*., ¶ 3.8.

In the spring of 2008, Human Resources Manager Stephanie Juarez informed plaintiff that she planned to hire Eric King to work in the pharmacy.  Mr. King did not hold a license as a pharmacy technician or pharmacy assistant, and plaintiff resisted having him work in the pharmacy until he obtained his license as a pharmacy assistant.  She felt pressured by Ms. Juarez to allow Mr. King to work in the pharmacy, but nevertheless insisted that he work in the front of the store until his application for a pharmacy assistant license was approved. *Id*., ¶¶ 3.9, 3.10.  Ms. Juarez informed plaintiff "that she was being unnecessarily cautious." *Id*., ¶ 3.10.  Once Mr. King's license as a pharmacy assistant was approved, he began working in the pharmacy and entered Target's on-site training program to become a licensed pharmacy technician. *Id.,* ¶ 3.12.  Plaintiff was in charge of his training, but the pharmacy was understaffed at this time, and this was difficult.  Plaintiff felt she was being pressured and criticized by Ms. Juarez. *Id*., ¶¶ 3.12 - 3.14.  She made an anonymous complaint to the Target Employees Helpline regarding Ms. Juarez' "bullying and interference" with the pharmacy department. *Id*., ¶ 3.14.

After Mr. King earned his license and began working in the pharmacy, he noticed Ms. Eckhoff's difficulty in calculating prescription doses, and mentioned this to plaintiff. *Id*., ¶ 3.15.  Plaintiff went on vacation about this time, and when she returned, she was asked by store manager Ed Zakrzewski about Ms. Eckhoff and her calculation difficulties.  Plaintiff reported that Ms. Eckhoff's deficient performance was adversely affecting pharmacy operations.  Mr. Zakrzewski advised her to get a book for Ms. Eckhoff to study to improve her calculation proficiency.  ¶ 3.16.  Plaintiff purchased the book at the University of Washington bookstore and gave it to Ms. Eckhoff in the pharmacy, explaining that it was to improve her calculation skills.  Deposition of Kemi Awosika, Dkt. # 36, Exhibit B, p. 4.  On November 19, 2008, Mr. Zakrzewski informed plaintiff that she was terminated for gross misconduct, explaining that she had condoned or authorized work off the clock.  Complaint, ¶ 3.17; Deposition of Ed Zakrzewski, Dkt. # 36, Exhibit C, p. 4.

On these facts, plaintiff filed a complaint in King County Superior Court for wrongful termination in violation of public policy.  Complaint, Dkt. # 1-1.  She contends that she did not ask Ms.

ORDER - 2

Eckhoff to work on the study book off the clock, so the reason proffered for her termination was false. Instead, she alleges that her termination "was substantially motivated by her efforts to ensure compliance with the statutes and administrative code provisions governing pharmacies in the state of Washington." Complaint, ¶ 3.22. She also asserts that her termination "was substantially motivated by retaliation for her efforts to protect the public from harm by disallowing unlicensed personnel from working in the pharmacy and by attempting to ensure that the licensed personnel performed their job duties correctly and safely." *Id*., ¶ 3.23.

Defendant timely removed the case to this Court on the basis of the parties' diversity, pursuant to 28 U.S.C. § 1332(a). Defendant has now moved for summary judgment on plaintiff's claims.

## DISCUSSION

### I. Legal Standard

Summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving party. *Id*. However, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp.*, 68 F. 3d at 1221.

### II. Analysis

A claim based on public-policy based wrongful termination is a narrow exception to Washington's general rule of employment at will. *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 232, 685 P. 2d 1081 (1984). The plaintiff "must plead and prove that a stated public policy, either

ORDER - 3

legislatively or judicially recognized, may have been contravened." *Id.* at 232-33. Washington courts have generally recognized the public policy exception when an employer terminates an employee as a result of his or her (1) refusal to commit an illegal act, (2) performance of a public duty or obligation, (3) exercise of a legal right or privilege, or (4) in retaliation for reporting employer misconduct. *Danny v. Laidlaw Transit Services, Inc.,* 165 Wash.2d 200, 208, 193 P. 3d 128, 132 (2008).

To state a claim for wrongful termination in violation of public policy, a plaintiff must satisfy a four-factor test. The plaintiff must show: (1) the existence of a clear public policy (the clarity element); (2) that discouraging the conduct in which he or she engaged would jeopardize the public policy (the jeopardy element);  (3) that the public-policy-linked conduct caused the dismissal (the causation element); and (4) that the defendant has not offered an overriding justification for the dismissal (the absence of justification element).  *Cudney v. ALSCO, Inc.,* 172 Wash.2d 524, 529, 259 P. 3d 244 (2011) (italics and brackets omitted).  These elements are conjunctive, meaning that all four elements must be proved. *Id.*

In arguing for summary judgment, defendant starts with the fourth factor of the analysis.  Target asserts that plaintiff was not terminated for refusing to commit an illegal act, for performing a public duty or obligation, for exercising a legal right or privilege, nor for reporting misconduct.  Instead she was terminated "because she instructed Ms. Eckhoff to take a workbook home and complete it on her own time."  Target's Motion for Summary Judgment, Dkt. # 34, p. 6.  As support for this assertion, defendant points to the deposition of Ed Zakrzewski, in which he testified,

Q. Okay. All right. So—and Kemi Awosika, what was the reason for her termination?

A. As I recall, it was gross misconduct.

Q. Meaning?

A. A policy violation. Specifically—I don't remember the exact term, but effectively, it was condoning or authorizing off-the-clock work.

. . . .

Q. Okay. So what do you remember about the complaint?

A. That Christina had been given a book by Kemi and had been instructed to work on it

ORDER - 4

on her own time and that her feeling was is that it was very much a requirement.

Q. Anything else?

A. That was pretty much it.

. . . .

A. Next—and I don't remember the—if it was—if Kemi was working that day or—or not. My first opportunity to talk to Kemi I had a discussion with her and asked her—let her know that there'd been this concern raised and asked her, you know, what the circumstances of it were.

Q. And what did she say?

A. I don't remember her specific—you know, the specific conversation. I can—I can tell you generally that she didn't deny that she had given her the book or that she had given her instructions to work on it.

She was emphatic that the workbook was not considered work, that it was—it was learning and training, but not work. And she referenced the fact that she would—she would never ask somebody to work off the clock.

Q. Okay. So as far as you know, did Christina Eckhoff ever take this book home?

A. As—I don't remember.

Q. Did Target ever pay Christina Eckhoff for any off-the-clock work?

A. If—I don't remember—if she had taken it home, that would have been the procedure, would be to verify how much—how much time she spent on it and make sure she was paid.

Q. Okay. But you have no recollection that any of that happened.

A. I don't remember.

Deposition of Edward Zakrzewski, Dkt. # 36, Exhibit C, pp. 3-7.

Target also points to the deposition of Stephanie Juarez, in which she testified,

Q. At some point did you learn that Kemi Awosika purchased a book for Christina Eckhoff to use to practice her calculations?

A. I don't remember that.

Q. You have no recollection of it at all?

A. I don't remember, huh-uh.

ORDER - 5

1  Q. What is your understanding of why Kemi Awosika was fired from Target?

2  A. Of what I remember, for asking someone to work off the clock.

3  Q. And what do you know about that? Who was it, do you know?

4  A. I believe it was Christina.

5  Q. What else do you know about the termination?

6  A. That's about it.

7  Q. Who told you about that?

8  A. Ed Zakrzewski.

9  Q. What did he say other than Ms. Awosika wanted Ms. Eckhoff to work off the clock?

10

11  A. That's all.

12  Deposition of Stephanie Juarez, Dkt. # 36, Exhibit E, pp. 3-4.

13  This testimony fails to establish that plaintiff did in fact direct Ms. Eckhoff to work off the clock

14  by studying the workbook on her own time. Ms. Juarez' testimony is inadmissible hearsay, and Mr.

15  Zakrzewski's, to the extent it is not hearsay, is vague and inconclusive. The fact that "she didn't deny

16  that she had given [Ms. Eckhoff] the book or that she had given her instructions to work on it" does not

17  in any way establish that plaintiff instructed Ms. Eckhoff to work on it at home.

18  Ms. Eckhoff's testimony is also inconclusive. She testified that she did not take the workbook

19  home and in fact she never used it.

20  Q. Did you ever look at the workbook?

21  A. No.

22  Q. You never used the workbook to assist you in your calculation skills?

23  A. No.

24  Q. What did you do with the workbook?

25  A. It was left in the pharmacy.

26  Q. And why didn't you look at it?

27  A. There wasn't time.

28  ORDER - 6

> Q. There was never any time when you could stop and take a look at it while you were working?
>
> A. No.

Deposition of Christina Eckhoff, Dkt. # 34, Exhibit B, p. 5.  This testimony creates an inference that Ms. Eckhoff understood she was to study the workbook in the pharmacy during work time.  However, she also testified that she went to Mr. Zakrzewski to ask if she should be working off the clock because "Kemi had given me a workbook to do at home."  *Id*., p. 6.  However, nowhere is there a definitive statement by Ms. Eckhoff that plaintiff actually directed her to take the workbook home and work on it there.  On the other hand, plaintiff testified as follows regarding the workbook:

> Q. And what did you tell her?
>
> A. I said, "I want you to use this book to practice your calculations in the store."  I said she could use one of the rooms when we had some free time and when other people were working.
>
> . . . .
>
> Q. But you told her that she's to do it on her own?
>
> (Objection by counsel).
>
> Q.  Go ahead.
>
> A. Do it in the store when we were not as busy in the pharmacy and she could step out.
>
> Q. But she's to do it on her own, right?
>
> (Objection to the form of the question)
>
> A. I didn't actually say she'd do it on her own.  It was more like, "Ed wants you to use this book to practice your calculations while you're in the store."  We didn't discuss on your own, with me, with some—another technician.  That was not even important at that time.

Deposition of Kemi Awosika, Dkt. # 38, Exhibit 1, p. 92-93.

The cited testimony demonstrates that there is a question of fact for the jury regarding whether plaintiff actually instructed Ms. Eckhoff to take the workbook home and work on it there.  Summary judgment must be denied on defendant's assertion that plaintiff cannot demonstrate absence of justification for her termination.

ORDER - 7

Defendant contends that plaintiff has also failed to demonstrate the existence of a clear public policy, the first element of a wrongful termination claim. Defendant argues that plaintiff asserts only a broad public policy of maintaining health and safety standards, and has not pointed to any specific statutory authority to support her claim. As defendant argues, "A clear public policy is not founded upon the subjective belief of an employee, rather, it must result from legislative action or [be] judicially recognized by a prior court decision." Motion for Summary Judgment, Dkt. # 34, p. 10; quoting *Loomis v. Washington*, 2011 U.S. Dist. LEXIS 103933 (W.D.Wash. Sept. 14, 2011) (citing *Thompson v. St. Regis paper Co.*, 102 Wash. 2d 219, 232 (1989).

Defendant's argument is misplaced. Plaintiff has identified Washington law and regulations which prohibit unlicensed ancillary staff from working behind the pharmacy counter, pointing to RCW 18.64A.040 and RCW 18.64A.060. Plaintiff's Response, Dkt. # 37, p. 9. She alleges that she was ordered or pressured by Ms. Juarez to violate that law by allowing Eric King to work in the pharmacy before he obtained his pharmacy assistant's license, but that she refused. She asserts that "Ms. Awosika incurred the ire of the Redmond Target management when she refused to allow Target to break state law by placing Mr. King behind the pharmacy counter before he met the statutory licensing requirement." *Id*. This is not, as defendant, argues, a purely private interest that she advanced. Her theory of the case is that her termination was in part retaliation for her refusal to act as directed in the hiring of Mr. King. Her allegations in this area are sufficient to meet the clarity element. As noted above, the public policy exception to employment at will is satisfied when an employee is terminated for her refusal to commit an illegal act. *Danny v. laidlaw Transit Services, Inc.*, 165 Wash. 2d at 208. S

In her opposition to summary judgment, plaintiff has identified another instance in which she was directed to act in violation of Washington law. Plaintiff alleges that

> Apparently after getting a complaint from a customer who was seeking drugs without a valid prescription, [Redmond Target manager] Mr. Walter approached Ms. Awosika and demanded that she fill the customer's prescription immediately even though the customer did not have any refills left, in violation of state law.

Plaintiff's Response, Dkt. # 37, p. 10, citing RCW 18.64.160, RCW 69.41.090. Defendant argues that plaintiff "cannot avoid summary judgment by asserting new allegations and theories that were not pled

ORDER - 8

in her complaint or disclosed during discovery." Defendant's Reply, Dkt. # 42, p. 1. However, this is not a new theory or cause of action, but rather additional factual support for her existing claim of wrongful termination. Defendant has been on notice of this allegation since January 17, 2012, when plaintiff was deposed and described these events and Mr. Walter's actions in detail. Deposition of Kemi Awosika, Dkt. # 38, Exhibit 1, pp. 76-79. She filed a complaint regarding this incident with the employee relations line, and it was investigated by Ed Zakrzewski, who appeared not to understand the seriousness of the situation. *Id*., p. 78. Given that it was Mr. Zakrzewski who terminated plaintiff, these allegations are highly relevant to her claim.

Defendant is correct that plaintiff did not plead allegations regarding this incident in her complaint. However, as defendant has moved to re-open discovery and continue this trial until October, it would not cause undue prejudice to allow plaintiff to amend her pleading to include these allegations. Dkt. # 45. The Court will accordingly entertain an appropriate motion for leave to amend the complaint. Such motion shall be filed on or before May 29, 2012.

Defendant next argues that plaintiff cannot establish the jeopardy element of the four-factor test, because she has "failed to demonstrate that Target did anything to put the public's health and safety in jeopardy." Motion for Summary Judgment, Dkt. # 34, p. 12. In order to establish jeopardy, "a plaintiff must show that he or she 'engaged in particular conduct, and the conduct directly relates to the public policy, or was necessary for the effective enforcement of the public policy.' " *Korslund v. Dyncorp Tri-Cities Services, Inc.*, 156 Wash. 2d 168, 181-82 (2005) 9quoting *Hubbard v. Spokane County*, 146 Wash. 2d 699, 713 (2002). The plaintiff has to prove that discouraging the conduct that she engaged in would jeopardize the public policy. *Id*., citing *Ellis v. City of Seattle*, 142 Wash. 2d 450, 460 (2000). Finally, plaintiff must show that other means of promoting the public policy are inadequate. *Id*., citing *Hubbard*, 146 Wash. 2d at 713.

Target asserts that plaintiff's allegations regarding Mr. King cannot satisfy the jeopardy element because his employment in the pharmacy complied with the law. That is, Target argues that plaintiff's claim fails because Mr. King did not ever work in the pharmacy before he obtained his assistant's license. This line of argument totally disregards plaintiff's allegation that it was her refusal to allow

ORDER - 9

Mr. King to work behind the counter, in opposition to Ms. Juarez's direction, that kept Target in compliance with the law. Thus, she "engaged in particular conduct" (refusal) which was necessary for the enforcement of the public policy (pharmacy laws). Discouraging such conduct would certainly jeopardize that public policy. Washington law protects from retaliation employees who, like plaintiff, speak up to prevent a violation of law or public policy. *Hubbard*, 146 Wash. 2d at 717.

Target further argues that plaintiff's allegations regarding Mr. King fail to satisfy the jeopardy element because she has not demonstrated that other means of promoting the public policy are inadequate. Target acknowledges that plaintiff reported her disagreement with Ms. Juarez, and her perception that she was interfering with pharmacy operations, to the employee hotline. Target suggests, however, that if plaintiff believed this was not adequate recourse,

> she could have reported any deficiencies to the Washington State Pharmacy Board. RCW 18.64.160 and 18.64A.050 specifically grant the Board of Pharmacy authority to "take disciplinary action" against any pharmacist or pharmacy technician who has "exhibited gross incompetency in the performance of his or her duties," "willfully or repeatedly violated any of the rules and regulations of the board of pharmacy or of the department, ["] or "willfully or repeatedly performed duties beyond the scope of his or her certificate."

Motion for Summary Judgment, Dkt. # 34, p. 18-19. Target thus appears to argue that reporting Ms. Juarez to the Board of Pharmacy was a proper course of action, available to plaintiff as a means of promoting public policy. However, Ms. Juarez was not subject to the discipline of the Board of Pharmacy, and this argument fails. Nor was reporting to the Board of Pharmacy a viable alternative to declining to follow Ms. Juarez's directions; had plaintiff acted as directed and allowed Mr. King to work in the pharmacy, she could have herself been subject to discipline.

In arguing the causation element, Target simply asserts that "plaintiff was not fired for her insistence that Mr. King wait to work in the pharmacy. Plaintiff's insistence was followed." Motion for Summary Judgment, Dkt. # 34, p. 21. Instead Target contends, as it has throughout the motion, that plaintiff was terminated because she "violated Target policies by instructing Ms. Eckhoff to perform calculations contained within the book off-the-clock." *Id*. As noted above, whether plaintiff actually instructed Ms. Eckhoff to take the book home and work on it there is a question of fact for the jury. If

ORDER - 10

she did not, then Target's proffered reason for her termination is merely a pretext.  Further, the fact that management acquiesced in plaintiff's insistence regarding Mr. King's work in the pharmacy does not negate the causation element.  Plaintiff has alleged that her refusal led directly to her being viewed in a negative light by management, and that ultimately culminated in her termination.

## CONCLUSION

Plaintiff has adequately alleged facts sufficient to satisfy the four factors of a claim of wrongful termination in violation of public policy.  Defendant's motion for summary judgment (Dkt. # 34) is accordingly DENIED.

Dated this 21 day of May 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 11